## SCOTT v. SULLIVAN.

1. CONTRACTS—CONSTRUCTION—LOGGING AGREEMENTS.

In a permit to cut timber, clauses conveying the right to cut and remove the timber for fifteen years, for the use of the grantee, from the lands of the grantor, and to have and "to hold the same for the period aforesaid to the use and benefit" of the grantee, the contract designating the parties as licensor and licensee, constituted a license to cut and remove the timber, title to which would pass after it should be cut and removed.

2. SAME—CONDITIONS PRECEDENT—PERFORMANCE.

Under a condition in such contract that a failure to pay certain taxes should operate as a surrender, cancellation or abandonment of all rights under the contract, and time should be of the essence of the agreement, a failure for three successive years to pay the taxes within the time limited terminates all rights under it as for a breach of a condition precedent.

3. SAME—INCONSISTENT THEORIES—ELECTION OF RIGHTS.

A party who insists that no forfeiture has taken place may not claim relief by amended pleadings, upon the inconsistent theory that equity will relieve from a forfeiture upon the tender of performance within the terms of the contract.

4. SAME—FORFEITURE—RELIEF IN EQUITY.

No meritorious case warranting equitable relief from the forfeiture of rights under the agreement is made by testimony showing that the party in default forgot the time allowed to him under his license, and delayed performance after notice of his default, because it would be inconvenient to make the required payments.

Appeal from Ontonagon; Cooper, J. Submitted October 20, 1909. (Docket No. 130.) Decided December 30, 1909.

Bill by Emmet H. Scott against Thomas G. Sullivan and others for the foreclosure of a mortgage. W. B. Blake and others intervened, claiming title by virtue of certain tax deeds. From a decree for complainant, said

interveners appeal.   Reversed, and decree entered for interveners.

*A. B. Eldredge* and *A. E. Miller*, for complainant.

*William G. Fitzpatrick*, for defendant Sullivan.

*Ball & Stone* (*A. W. Lamson*, of counsel), for appellants.

MCALVAY, J.   The bill of complaint in this case was filed for the purpose of foreclosing a certain mortgage given by defendant Sullivan to complainant November 8, 1905, upon 2,040 acres of land of which he was owner in fee, and the timber on 3,520 acres of other land.   All of this land was situated in Ontonagon county.   The Prather Engineering Company and Edward W. Glynn, trustee, were made defendants, being second mortgagees. W. B. Blake and the other intervening defendants, claiming title in fee to these lands last described and the timber thereon, petitioned and were allowed to intervene, and file their answer and cross-bill.   The complainant and defendant Sullivan answered this cross-bill.   The defendants Prather Engineering Company and Glynn, trustee, answered the original bill.   Glynn, trustee, demurred to the answer and cross-bill of the intervening defendants, and also to the answer of Prather Engineering Company, which by amendment asked affirmative relief against intervening defendants.   The original bill was taken as confessed against defendant Sullivan.   The various issues joined upon the above pleadings were heard together, and a decree was rendered in favor of complainant and defendant Sullivan, granting foreclosure of the mortgage, and denying the relief prayed by the intervening defendants in their answer and cross-bill.   The controversy relates to the timber claimed by Sullivan through assignments hereinafter described, and is the timber included in the mortgage to complainant.

On September 9, 1902, the Wilmot Mining Company, a Michigan corporation, which was the owner of lands de-

scribed in the pleadings, having theretofore sold all of the pine timber thereon to Charles F. Button with the right to cut the same within a certain time, made, executed, and delivered to John Burns the following instrument in writing:

"Know all men by these presents, that the Wilmot Mining Company, a corporation organized and existing under and by virtue of the laws of the State of Michigan, party of the first part, for and in consideration of the sum of seven thousand five hundred and forty ($7,540.00) dollars, to it in hand paid, the receipt whereof is hereby acknowledged, has bargained and sold, and by these presents does bargain, sell, grant and convey to John Burns, of the city of Ashland, State of Wisconsin, party of the second part, the right to cut and remove for his own use, during the term of fifteen years from the date hereof, all the timber, down and standing, alive and dead, during said period, excepting the pine which has been sold to Charles F. Button, now on the following described lands situated in the county of Ontonagon and State of Michigan, to wit: [Here follow descriptions of all the lands contained in the answer and cross-bill of said intervening defendants.]

"To have and to hold the same for the period aforesaid to the use and benefit of the said party of the second part, his heirs, executors, administrators and assigns, and said party of the first part hereby covenants and agrees to and with the said party of the second part that it will warrant and defend the said timber unto the said party of the second part, his heirs, executors, administrators and assigns forever against the lawful claims and demands of all persons, except for public taxes for the period covered by this instrument, one-half of all of which are hereafter payable by the party of the second part, except the taxes for the year 1902.

"And the said 'Wilmot Mining Company' further, by these presents, licenses said party of the second part to enter and re-enter upon and pass over and across said premises as often as may be necessary during the aforesaid period, subject to the conditions of the sale of the pine timber thereon, made June 23, 1902, to Charles F. Button, for the purpose of cutting, hauling, removing and otherwise using said timber, and to make and maintain such logging roads as may be necessary for such purpose.

But this license shall not justify any unnecessary injury to other timber, or authorize any fences, buildings or other structures that now are or hereafter may be put on said premises by said 'Wilmot Mining Company,' its agents or assigns, to be in any way injured or interfered with.

"Provided, however, and it is hereby expressly agreed, that time is of the essence of this contract, and these presents are upon the express conditions that said party of the second part shall pay one-half of all taxes and assessments of every kind whatsoever which shall be imposed upon said premises, commencing with the year 1903, and continuing until the surrender by said second party of this license, except as to increased value of any description by reason of improvements made by said first party, and shall on or before the first day of March of such years deliver to said first party a proper official receipt for one-half of the taxes so levied, assessed or imposed on said premises, as well as said timber, for each of such years, and a failure to pay such taxes as aforesaid, and deliver the receipts as aforesaid shall, without any action taken in reference thereto, by or on behalf of said Wilmot Mining Company, its successors or assigns, be deemed to be a surrender by said licensee of all rights hereunder, whether at law or in equity, and a cancellation or abandonment thereof.

"It is further agreed that all timber covered by this license not removed from said premises during the life of this license shall be and remain the property of said Wilmot Mining Company, its successors and assigns, as fully and absolutely as if this instrument had never been executed.

"In witness whereof, the party of the first part has caused these presents to be signed by its president, and countersigned by its secretary, and its corporate seal to be hereunto affixed, this 9th day of September, A. D. nineteen hundred two," etc.

On November 3, 1902, Burns sold "all his rights and interests" in the timber given by the foregoing instrument to Dennis J. Norton, who, on December 3, 1902, sold the same to defendant Sullivan for a consideration of $8,800. On October 3, 1904, the Wilmot Mining Company, by warranty deed, sold all of said lands upon which the timber stood to appellant W. B. Blake, which deed contained the following reservation:

"Excepting and reserving therefrom all the minerals underlying said herein described lands, and excepting and reserving all of the timber now on said described lands, with the right to enter upon said lands and employ all necessary means for the removing of said minerals herein reserved and removing said timber herein reserved."

On July 16, 1906, Blake conveyed to defendants Gates and Johnson an undivided three-fourths of all of said lands with the same reservation. Neither Burns nor any assignees claiming under him paid the taxes on these lands, as required by the terms of the license to him. On September 16, 1907, the Wilmot Mining Company executed a deed to Blake, Gates, and Johnson, which recited all of the transaction relative to this timber with Burns and the terms of the writing given him; the assignments from Burns to Norton, and from Norton to Sullivan; the former deed to Blake and his conveyance to Gates and Johnson; the fact that neither Burns nor any of the parties succeeding to his rights had paid the taxes on one-half of said lands and timber according to the terms of the writing under which they held, declaring and determining that the license had become forfeited and abandoned; and also reciting that the true intent of the parties when the former deed was given to Blake was to grant to him the lands, together with the timber, subject only to the rights of Button and Burns, under the agreements mentioned. Therefore the grantor conveyed to Blake, Gates, and Johnson in their proper proportions all of said timber, subject only to the rights of Button in the pine.

It was admitted that neither complainant nor any of the original defendants nor Burns or Norton had paid any of these taxes subsequent to the year 1903 (except taxes for 1907, upon a half of one section of land, was paid by complainant). Tax receipts were produced, showing that Blake had paid the taxes on an undivided half of said lands for the year 1904 and the same for the year 1905, except one 40 acres, on September 24, 1906, and it was admitted that these taxes were assessed against said lands for said years, and were returned unpaid and delinquent.

Taxes for the years 1906 and 1907, which also had been paid by the intervening defendants, we think the record shows were paid to the auditor general after this suit was commenced and issue joined. Complainant's claim against defendant Sullivan was not disputed. The evidence of appellants was first introduced, and was entirely matters of record and in writing. Evidence was then introduced by complainant and the original defendants, by way of defense, to the answer and cross-bill of the intervening defendants, which will be noticed later. Then complainant and defendant Sullivan asked, and were allowed, subject to the objection of the intervening defendants, to amend their answers to the cross-bill of the intervening defend-. ants, to allege and show the reasons and excuse of defendant Sullivan and complainant for failure to pay taxes in accordance with the contract, on account of Sullivan's lack of money, and that he had forgotten the requirements of the contract, and to allege that under the contract it was necessary for the Wilmot Mining Company to take some action declaring a forfeiture under the contract, and that they took none until September 27, 1907; that in the meantime all taxes had been paid; that as to taxes of 1907, the intervening defendants paid them before the time stipulated in the contract had expired, and thereby prevented Sullivan and complainant from paying them. They further denied that a forfeiture had occurred or been properly declared, and asked that, if the court should find that there had been such a forfeiture, they have relief therefrom upon paying all of the taxes, with interest, and any sum which the court may find equitable that should be paid by them by reason of expenses incurred, and for general relief. A decree of foreclosure was entered as to both the land and the timber against Sullivan. The interveners were denied relief, the decree providing that the taxes paid by them which Sullivan should have paid constituted a lien on the timber superior to the lien of complainant and others. The interveners have appealed.

The principal question in the case to be determined is, un-

der the writing entered into between the Wilmot Mining
Company and Burns, what interest, right, or title Burns acquired, and whether the effect of the default of Burns and
his assignees to pay taxes as provided in the writing operated as a surrender of all rights thereunder and a termination of such interest.  It is contended by complainant and defendant Sullivan that by this writing title to
the timber passes, *in præsenti,* to Burns.  A reading of
this writing discloses that it is designated as a license,
and the parties are called licensor and licensee, and the
granting clause is a bargain and sale to Burns of "*the
right to cut and remove* for his own use during the term
of fifteen years from the date hereof all the timber, down
and standing, alive and dead, during said period  *  *  *
now on the following lands,*"* etc.  The *habendum* clause
reads, "To have and to hold *the same* for the period
aforesaid to the use and benefit of said party of the second
part," etc.  The final paragraph of the writing provides:

"It is further agreed that all timber covered by this
license not removed from said premises during the life of
this license *shall be and remain* the property of said
Wilmot Mining Company, its successors and assigns, as
fully and absolutely as if this instrument had never been
executed."

The character of an instrument is not to be determined
by any particular language in any particular part of the
instrument, but upon the consideration of the whole instrument and the purpose and object which is sought to
be accomplished.  The language of the whole instrument,
fairly interpreted in connection with its purpose and object, must always be the foundation of all interpretation
and construction.  The parties were dealing with reference
to the timber remaining on 3,520 acres of land at a nominal price of $2 per acre, which indicates to any one having
the slightest knowledge of the value of standing timber at
that time, and as the record indicates, that these were cut
and burned lands, with little value left either in land or
timber, and were so dealt with by the parties.  Our con-

clusion is, in view of the clear and unmistakable language of this instrument, that we cannot hold that a present title to this timber passed to Burns. It was a license, for a valuable consideration, to cut and remove this timber, under certain expressed conditions, during the term limited.

Complainant, in his contention that a present title to the timber passed under this contract, relies upon *Hodges* v. *Buell*, 134 Mich. 162 (95 N. W. 1078), and *French* v. *Lumber Co.*, 135 Mich. 424 (97 N. W. 961). These cases, and the cases cited and quoted in them, and upon the authority of which they were decided, are all cases in which title to timber was conveyed in terms by deed or contract, with the limitation as to the time of removal, or cases in which land was sold reserving certain timber to be removed within a certain time, and are distinguishable from the case at bar, where a license was given "to cut and remove for his own use," during the period limited, "all of the timber, down and standing, alive and dead, * * * now on the following described lands." Our construction is that under this contract title passed only when the timber was "cut and removed." The cases relied upon could have no applicability to the construction of this license, except when a question arose as to whether the timber had been "cut and removed" within the term limited, a question not in this case. The parties contending in the present case are in exactly the situation of the original parties to the agreement. The intervening defendants have all the rights of the Wilmot Mining Company, and complainant and defendant Sullivan represent the rights and interests of Burns.

The paragraph of the contract containing the conditions referred to, which the licensee undertook and agreed to perform in order to insure his rights thereunder to cut and remove the timber during the time limited, on account of its importance and for the purposes of convenience, is here repeated:

"Provided, however, and it is hereby expressly agreed,

that time is of the essence of this contract, and these presents are upon the express conditions that said party of the second part shall pay one-half of all taxes and assessments of every kind whatsoever which shall be imposed upon said premises, commencing with the year 1903 and continuing until the surrender by said second party of this license, except as to increased value of any description by reason of improvements made by said first party, and shall on or before the first day of March of such years deliver to said first party a proper official receipt for one-half of the taxes so levied, assessed or imposed on said premises, as well as said timber, for each of such years, and a failure to pay such taxes as aforesaid, and deliver the receipts as aforesaid shall, without any action taken in reference thereto, by or on behalf of said Wilmot Mining Company, its successors or assigns, be deemed to be a surrender by said licensee of all rights hereunder, whether at law or in equity, and a cancellation or abandonment thereof."

The record shows that taxes for the years 1904, 1905, and 1906 were not paid by defendant Sullivan or the complainant, as required by the above provision.

The appellants contend that the instrument was self-operating; that, although affirmative action was taken to declare the license canceled and terminated, it was not necessary, and that the relief asked by them is a declaration by the court of the effects which follow the default and forfeiture, and not an application to the court to declare or enforce a forfeiture.

Complainant, insisting that title passed, urges that this provision is a mere security and a condition subsequent, from the effect of a violation of which equity will not relieve where compensation in money is adequate, and that equity will never intervene affirmatively to enforce a penalty or forfeiture. If our construction of the contract were in accord with complainant's contention, the logical sequence would be to adopt the propositions last above stated, but we have passed his first position by the construction already given. The condition relative to taxes was a condition precedent. The license being a grant of

privilege to be exercised upon the conditions agreed upon, the performance of ·which was necessary to protect the title of the grantor, then such license could be exercised only upon the performance of such conditions, and a neglect to perform the conditions was stipulated to be an abandonment of the license. The time for such performance of the conditions was made by the express terms of the contract essential. For three successive years the conditions to pay these taxes were not performed. By the terms of the contract, these defaults operated as an abandonment and surrender of the license and all rights thereunder. 1 Pomeroy on Equity Jurisprudence (3d Ed.), § 455; 2 Warvelle on Vendors (2d Ed.), § 807; *Detroit, etc., Plank Road Co.* v. *Railway Co.*, 103 Mich. 585 (61 N. W. 880). The same rule is applied in all cases where options are given on conditions to be performed within a certain time.

The theory of the intervening defendants' answer and cross-bill was that, by the agreement the licensee having defaulted, the license was forfeited, annulled, and canceled, and the prayer was that this be so declared by the court, and the license, complainant's mortgage, and the subsequent mortgages be declared clouds upon their title to said timber, etc. Complainant and defendant Sullivan, under amendments to that effect offered and allowed under objection at the close of the proofs, while insisting that no forfeiture had occurred, asked that, if the court should find that the nonperformance of the conditions of the license operated as a forfeiture of their rights, they might be relieved therefrom by such payment as the court might decree. Without deciding whether these amendments were timely or not, we are satisfied that the evidence furnished, as bearing upon the reasons why relief should be granted, shows that Sullivan's excuse was that he had forgotten the time payment should have been made, and that it would have been a matter of inconvenience for him to pay; that he asked the complainant to pay, and he said he would wait until after foreclosure. Sullivan always

had knowledge of the conditions in the license, and complainant testified that, through an abstract furnished early in April, 1906, by Sullivan, he understood that one-half of the taxes should be paid by Sullivan. He filed his bill in April, 1907, and made no tender until about the 1st of October following. No meritorious case was made out warranting the court in granting such relief, if the case were one where the question could be properly considered. We think the question was not open to the parties, who from the beginning had insisted there was no forfeiture, and so insist in this court.

The supreme court of Massachusetts said:

"We have not considered the plaintiff's argument that there was no forfeiture of the lease. We are of opinion that, in a bill in equity to be relieved from a forfeiture at law [which is the position of complainant and Sullivan in this case under their cross-answers], it is not open to him to make the contention that there is no forfeiture at law." *Gordon* v. *Richardson*, 185 Mass. 492 (70 N. E. 1027, 69 L. R. A. 867).

So in the case at bar, the positions taken by complainant and defendant Sullivan were inconsistent. Upon both contentions we do not agree with them, as appears from our conclusions herein set forth. By nonperformance of the conditions of the license all rights under it had terminated, and the intervening defendants were entitled to have the court so declare. The court was in error in not so finding and in decreeing that the claims of defendant Sullivan and complainant and the other defendants were clouds upon their title to said timber, and granting the relief asked by them.

The decree of the circuit court is reversed, and a decree will be entered in accordance with this opinion, with costs of both courts to appellants.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.